IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CALVIN ELLIS                                                                                                PLAINTIFF

V.                                                                        CIVIL ACTION NO.: 1:12-CV-234-SA-DAS

TUPELO PUBLIC SCHOOL DISTRICT                                                           DEFENDANT

MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

This cause comes before the Court on Defendant's Motion for Summary Judgment [29]. Because the Court determines that Plaintiff's breach of contract, tortious breach of contract, and procedural due process claims are barred by the doctrine of res judicata, the Court dismisses those counts of Plaintiff's Complaint. In addition, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact with regard to his equal protection and tortious interference claims and grants summary judgment in favor of Defendant as to those counts as well.

FACTUAL AND PROCEDURAL BACKGROUND

The instant suit arises from a disagreement between Calvin Ellis and the Tupelo Public School District ("the District") regarding Plaintiff's termination. Ellis, who was hired by the District in 2006, was employed as both a music teacher and the show choir director at Tupelo High School. The terms of that employment relationship were embodied in a written contract, which was renewed on an annual basis. That contract was renewed for the 2011 though 2012 academic year in August of 2011.

On September 30, 2011, Ellis hosted a "bonding night" for the male students enrolled in the school's coed show choir. That same night, Ellis's wife hosted a "hair and makeup night" for the female students enrolled in the choir. During the course of the evening, the group of female

students "pranked" the males' cars "by painting them with shaving cream and other non-destructive substances." In return, the group of male students decided to engage in some "pranking," themselves. According to Plaintiff, however, the boys' methods were admittedly "more aggravated."

The following week, the District administration received a parental complaint regarding Ellis's involvement in the alleged "pranking" incident. The interim superintendent, David Meadows, ensured that an investigation of the events would ensue. He further conveyed that the complaint should be lodged with the high school principal, Jason Harris. On October 6, 2011, Harris delivered Ellis a letter informing him that the superintendent was placing him on administrative leave until a thorough investigation could be conducted. Ellis was directed to abstain from contacting any students or parents during the pendency of the investigation, and was further instructed to discontinue giving private voice lessons to students in the interim.

As the administration conducted interviews with concerned parents and students, the scope of the investigation broadened to allegations outside of the pranking incident as well. During the course of the investigation, Meadows met with Ellis on October 13, 2011 to discuss both his involvement in the pranking incident and additional matters which had been brought to the attention of the administration. Ellis thereafter retained an attorney and requested another meeting to respond to the District's allegations. On October 28, 2011, Ellis was terminated pursuant to a letter identifying twenty-three purported counts of misconduct, including, in part, violation of music copyright laws, providing private voice lessons during the school day, failing to provide adequate supervision on a field trip, failing to provide adequate supervision at a competition, accompanying minors out after midnight in violation of a city ordinance, creating a

hostile work environment, charging personal expenses to a booster club credit card, and committing acts of insubordination while on administrative leave.

Ellis, through counsel, thereafter requested a public hearing pursuant to Mississippi Code Section 37-9-59. Consequently, the Board opted to employ a hearing officer under Mississippi Code Section 37-9-111, which provides school boards the discretion to conduct the hearing or appoint an officer for such purpose. That hearing was set for December 5, 2011. In the interim, Ellis unsuccessfully sought clarification on the purported instances of misconduct, and attempted to gain access to his former email account and booster club financial records. The District provided Ellis with its witness list on December 1, 2011, and relinquished a copy of its exhibits on December 4, 2011.

The hearing spanned approximately ten days over a three month period, generating in excess of 2,000 pages of transcribed argument and testimony. Upon agreement of the parties, Ellis and the District supplemented the hearing record with additional affidavits. On March 23, 2011, the hearing officer issued his report, concluding that the termination was "a proper employment decision based upon a valid educational reason." Pursuant to his request, Ellis was allowed to present a statement regarding the hearing officer's findings before the Board on March 26, 2012. In spite of his plea, the Board nonetheless issued a written decision adopting and affirming the dismissal on March 28, 2011. That written decision reiterated that Ellis had a right to appeal, contingent on the filing of a petition in the Lee County Chancery Court. Ellis intentionally opted to forego filing that appeal, and instead filed a separate action in this Court. On December 18, 2012, Ellis filed an amended complaint, averring liability under equal protection, procedural due process, tort, and contract theories. Defendant has since filed a

motion for summary judgment, contending that Plaintiff's claims are due to fail as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG

Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION AND ANALYSIS

Defendant contends that a number of Plaintiff's claims are precluded, while arguing that the remaining claims simply fail on their merits. Accordingly, the Court first considers Defendant's preclusion contentions, and then turns to the merit-based arguments.

### A. *Precluded Claims*

Under Mississippi Code Section 37-9-59, "[f]or incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment of a pupil[,] or other good cause[,] the superintendent of schools may dismiss or suspend any licensed employee in any school district." However, "[b]efore being so dismissed or suspended[,] any licensed employee shall be notified of the charges against him and he shall be advised that he is entitled to a public hearing upon said charges." MISS. CODE ANN. § 37-9-59. Accordingly, "upon a request for a hearing by the person so suspended or removed[,] [the school board] shall set a date, time and place for such hearing which shall be not sooner than five (5) days nor later than thirty (30) days from the date of the request. The procedure for such hearing shall be as prescribed for hearings before the board or hearing officer in Section 37-9-111." Failure to request a hearing "constitute[s] a waiver of all rights by said employee and such discharge or suspension shall be effective on the date set out in the notice to the employee." MISS. CODE ANN. § 37-9-59.

Mississippi Code Section 37-9-111 provides that such hearing "may be held before the board or before a hearing officer appointed for such purpose by the board, either from among its own membership, from the staff of the school district or some other qualified and impartial person . . . ." MISS. CODE ANN. § 37-9-111(1). When conducted by a hearing officer, the hearing

"shall be conducted in such a manner as to afford the parties a fair and reasonable opportunity to present witnesses and other evidence pertinent to the issues and to cross-examine witnesses presented at the hearing." MISS. CODE ANN. § 37-9-111(3). After the hearing, the board shall review "the report of the hearing officer, if any, the record of the proceedings and, based solely thereon, conclude whether the proposed nonreemployment is a proper employment decision, is based upon a valid educational reason or noncompliance with school district personnel policies and is based solely upon the evidence presented at the hearing . . . ." MISS. CODE ANN. § 37-9-111(5).

Any employee dissatisfied with the board's final decision is entitled to judicial review under the provisions of Mississippi Code Section 37-9-113. As articulated there, "[a]n appeal may be taken by such employee to the chancery court of the judicial district in which the school district is located, by filing a petition with the clerk of that court . . . within twenty (20) days of the receipt of the final decision of the board." On review, the chancery court's scope of review is limited to whether the school board's decision was, in pertinent part, "unlawful" or "[i]n violation of some statutory or constitutional right of the employee." MISS. CODE ANN. § § 37-9-113(3) and 37-9-113(3)(c). "Any party aggrieved by action of the chancery court may appeal to the Supreme Court in the manner provided by law." MISS. CODE ANN. § § 37-9-113(5).

In the case at bar, Plaintiff declined to appeal the board decision, opting instead to file a collateral action in federal court. Accordingly, Defendant now argues that Plaintiff's failure to timely appeal the board's decision rendered the decision final in an "adjudicative sense" and thereby precludes his breach of contract, tortious breach of contract, and procedural due process claims under the doctrines of res judicata and collateral estoppel.[1] According to Plaintiff,

---

[1] Although not raised by Defendant, the Court notes that Plaintiff has curiously failed to invoke 42 U.S.C. § 1983 as the vehicle for his constitutional claims, appearing instead to bring those claims directly under the Fourteenth

however, the subsequent action is not barred by either res judicata or collateral estoppel because "Ellis has not sought in this action reinstatement to his position as a teacher with the district." In essence, Ellis argues that the present action is not barred because he seeks a remedy not provided by the legislatively established review process. The Court now turns to the merits of those arguments.

*1. Breach of Contract, Tortious Breach of Contract, Procedural Due Proess*

As defined by the Fifth Circuit, "[r]es judicata is the venerable legal canon which proclaims that a valid and final judgment precludes a second suit between the same parties on the same claim or any part thereof." Medina v. INS, 993 F.2d 499, 503 (5th Cir. 1993). "To determine the preclusive effect of a state court judgment in a federal action, "federal courts must apply the law of the state from which the judgment emerged.'" Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 (5th Cir. 2006) (quoting Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1096-97 (5th Cir. 1995)).

Under Mississippi law, "res judicata or collateral estoppel precludes relitigation of administrative decisions." A & F Prop. v. Madison Co. Bd. of Supervisors, 933 So. 2d 296, 302 (Miss. 2006) (internal quotation omitted). As such, even in the context of an administrative decision, the doctrine precludes parties from "litigating claims 'within the scope of the judgment.'" Id. (quoting Anderson v. LaVere, 895 So. 2d 828, 832 (Miss. 2004)). That bar

---

Amendment. The confusion regarding Plaintiff's theory of recovery is exacerbated, however, by the fact that Plaintiff conditions the Court's jurisdiction under 28 U.S.C. § 1343(a)(3) and requests attorney's fees and costs under 42 U.S.C. § 1988, which includes no provision for actions brought directly under the Constitution. Additionally, as the Fifth Circuit has reiterated, "[e]ven the most cursory reading of our case law demonstrates beyond cavil that we have permitted prosecution of such actions directly under the Constitution *only* when necessitated by a total absence of alternative courses and 'no other means' existed to seek 'redress for flagrant violations of the plaintiff's constitutional rights' . . . When a statutory mechanism is available, 42 U.S.C. § 1983 being a prime example, plaintiffs must invoke its protection." Mitchell v. City of Houston, 57 F. App'x 211, at *1 (5th Cir. 2003) (quoting Hearth, Inc. v. Dep't of Public Welfare, 617 F.2d 381, 382-83 (5th Cir. 1980)). Because, however, the Court determines that Plaintiff's constitutional claims fail on other grounds, the Court need not give this issue consideration.

applies not only to those claims that were raised in the prior proceeding, but also to those issues that should have or could have been raised as well. Id. (citing Anderson, 895 So. 2d at 832). The doctrine is an embodiment of the law's refusal "to tolerate a multiplicity of litigation." Id. (quoting Little v. V & G Welding Supply, Inc., 704 So. 2d 224, 232 (Miss. 1997)). Specifically, it is "designed to avoid the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." Id. (quoting Harrison v. Chandler-Sampson Ins., Inc., 891 So. 2d 224, 232 (Miss. 2005)).

To invoke the doctrine of res judicata in Mississippi, the following four identities must be present: "(1) identity of the subject matter; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality or character of a person against whom a claim is made." Id. (citing Harrison, 891 So. 2d at 232). If those identities are present, the parties are barred from relitigating "issues that were decided or could have been raised in the previous action." Id. (citing Harrison, 891 So. 2d at 232).

In gauging whether identity of subject matter exists, the court's recent analysis has focused on the actual basis of the actions, "rather than the identity of the things sued for." Gates v. Walker, 62 F.3d 394, at *3 (5th Cir. 1995) (not reported) (citing Riley v. Moreland, 537 So. 2d 1348, 1354 (Miss. 1989)). In other words, "identity of subject matter turns on a general characterization of the suit. It is the substance of the action." Black, 461 F.3d at 591. Conversely, identity of cause of action "is defined by the underlying group of facts giving rise to a claim." Id. It is measured by reference to the "group of operative facts that entitle[] a petitioner to seek remedy in court." Id. at 589.

Although the two concepts are certainly related, they require distinct consideration. Id. Illustratively, the Fifth Circuit's decision in Black provides guidance for parsing and applying the two requirements. Id. There, the plaintiff initially filed suit in state court against a defendant school district on the basis that school employees had allegedly failed to prevent a sexual assault of plaintiff's daughter. Id. at 587. While an appeal of the state judgment was pending, the plaintiff filed a second suit against the same defendants in federal court, averring liability under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and the Civil Rights Act of 1964. Id. In determining whether there was subject matter identity between the two suits, the court articulated that both could be considered contingent on "the sexual assault of Jane Doe." Id. The causes of action, in turn, were the underlying facts giving rise to plaintiff's claims: the "sexual assault at the hands of two boys in her unsupervised classroom." Id. As such, identical factual allegations supported the legal theories in both suits and the identities of subject matter and cause of action were present. Id.

In the case at bar, Plaintiff contends only that "[t]he subject matter and the circumstances giving rise to the issues before the Court differ from those in Plaintiff's termination hearing." The Court perceives this to be a rebuttal to Defendant's characterization of the identities of subject matter and cause of action.[2]

---

[2] Plaintiff offers very little additional argument regarding res judicata. As to his collateral estoppel response, he relies almost exclusively on the court's holdings in Board of Trustees of State Institutions of Higher Learning v. Brewer, 732 So. 2d 934, 937 (Miss. 1999), and Smith v. University of Mississippi, 797 So. 2d 956, 961 (Miss. 2001) (construing Brewer). Brewer, however, provides no mention, much less discussion, of the doctrines of res judicata or collateral estoppel, providing this Court no guidance for the particular issue at hand. See Brewer, 797 So. 2d at 936-37. Res judicata and collateral estoppel, after all, are affirmative defenses that must be pled by the defendant. Johnson v. Howell, 592 So.2d 998, 1001 (Miss. 1991). As the court explicitly alluded to in Brewer, the defendant there had failed to raise the "statutory procedures" defense in its answer. Brewer, 732 So. 2d at 936. Smith, on the other hand, reaffirmed that "[o]nce an agency decision is final and the decision remains unappealed beyond the time to appeal, it is barred by administrative res judicata or collateral estoppel." Smith, 797 So. 2d at 963 (internal quotation omitted). Accordingly, Plaintiff's reliance is misplaced.

According to Plaintiff, the question before the Board was whether the termination "[was] a proper employment decision [and was] based upon a valid educational reason or noncompliance with school district personnel policies . . . ." See MISS. CODE ANN. § 37-9-111(5). In arguing that the decision failed to constitute a "proper employment decision," Ellis offered largely the same argument presented here. Illustratively, during the parties' opening statements, counsel for Ellis articulated, "I move that all charges against my client, Calvin Ellis, be dismissed and that he be immediately reinstated to his position as a teacher at Tupelo High School. As grounds for my motion, I would show that this proceeding from it inception has been one which has violated his rights to due process and his rights to a fair hearing under the law."

In support thereof, Plaintiff's counsel argued:

> [O]n October 28, 2011, my client Calvin Ellis was handed a four page letter, contained some 22 charges against him . . . If you look at the letter, which I will also make an exhibit to my motion, we have not just 22 charges. Many of the charges have subparagraphs. . . . Many of these charges are not specific. They contain no statement of facts. They contain no statement of how and when Mr. Ellis violated any school policy, any law, or did any other—or committed any other act that violated school policy in any way. . . . Consequently, even on just that one charge, I don't have any idea of who to call as witnesses at this proceeding. . . . Yesterday at 1:37 p.m., Sunday, I received by email from Ms. Stimpson 140 documents. Because I was in the office working Sunday, I found out about these documents. Had I not been in the office Sunday working on this case, I would not have know about the existence of these 140 documents until eight o'clock this morning. . . . However, it is clear that Mr. Ellis has not been given adequate notice of the charges against him, which is a fundamental part of due process, and he has not been given a fair hearing today.

In resolving those issues, the hearing officer proposed that, "the superintendent did present substantial evidence that supports his decision to terminate Mr. Ellis as being a proper employment decision and based upon a valid educational reason or non-compliance with school district personnel policies." Based on its own review, the Board concluded that "evidence

presented at the hearing demonstrated that actions of Mr. Ellis constituted good cause for the Superintendent's decision to terminate Mr. Ellis." Accordingly, the Board found that "the Superintendent's decision to terminate the employment of Mr. Ellis is a proper employment decision and is not contrary to law."

In his present amended complaint, Plaintiff avers, "The exact number of charges made by the Administration of TPSD was, and is, incapable of exact determination." Further, he argues, "the vast majority of the 'charges' are so vague and indefinite as to be wholly deficient in giving Ellis adequate notice of the acts and omissions upon which TPSD based his termination." Thus, according to Plaintiff, "[t]he Board's decision to uphold the termination of Ellis is therefore arbitrary, capricious and without foundation in fact from any evidence adduced at the hearing." Plaintiff conditions his breach of contract claim on the allegation that Ellis was terminated "without valid cause" and deprived of a "'full and fair' opportunity to litigate the alleged reasons for his termination." Plaintiff tacks on his tortious breach claims by arguing, that such breach was "willful, intentional, wanton and wrongful" and constitutes an independent tort. And, in regard to his procedural due process claim, that Defendant failed to follow Board policies regarding investigations of complaints, failed to give adequate notice of the reasons for his termination, and failed to allow adequate discovery prior to the hearing.

As articulated by the Fifth Circuit in <u>Black</u>, in gauging the subject matter of an action, the court looks to the "substance of the action," or the "general characterization of the suit." <u>Black</u>, 461 F.3d at 591. Here, the substance or general characterization of the underlying action was the propriety and lawfulness of Ellis's termination. Specifically, the Board had to consider whether there existed valid cause to terminate the contract and whether the decision constituted "a proper

employment decision." That same characterization applies with equal force to Ellis's federal suit, and the Court thus finds the identity of subject matter present.

As to the causes of action, the court should look to the "underlying group of operative facts giving rise to the claim." During the prior administrative proceeding, the underlying facts of the cause of action encompassed the factual bases of the District's distinct allegations of Ellis's misconduct as well as the district's conduct in investigating and then prosecuting the termination proceeding. Here, Ellis again seeks to contest the veracity of the District's allegations and then challenge the purported procedural inadequacies leading up to his termination hearing. Accordingly, the Court finds identity in the causes of action to be present as well. Because Ellis has not contested the identities of the parties and the quality or character of a person against whom a claim is made, and the Court finds the identities of subject matter and cause of action present, res judicata applies to bar the subsequent claims. Ellis's present action is therefore barred with regard to his breach of contract, tortious breach of contract, and procedural due process claims.[3] Consequently, the Court need not reach Defendant's contentions regarding the applicability of collateral estoppel or the underlying merits of those claims.[4]

---

[3] Although Plaintiff fails to draw any attention to the issue, the Court has given additional consideration to the applicability of the res judicata bar to Plaintiff's procedural due process claims due to the fact that the underlying adjudication was an administrative decision, rather than a court-issued judgment. The Court finds that res judicata is still applicable, however, because the Supreme Court has established that outside of Title VII, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate… federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (internal quotation omitted). Further, the Fifth Circuit has plainly articulated that such administrative res judicata is not limited to factual findings, but includes legal resolutions as well. Medina, 993 F.2d at 503 ("We find no viable support for [the position that administrative res judicata is limited to factual findings."); see also Cox v. Desoto Co., 564 F.3d 745, 749 (5th Cir. 2009) (finding that wrongful termination claims were precluded by state administrative decision regarding the reasons for plaintiff's discharge). Finally, a wide range of persuasive authority also leans in favor of granting preclusive effect to the District's quasi-judicial determination here. See Misischia v. Pirie, 60 F.3d 626, 629-30 (9th Cir. 1995) (granting final and preclusive effect to administrative legal determination when plaintiff failed to appeal to state court as allowed by statute); Atiya v. Salt Lake Cty., 988 F.2d 1013, 1020 (10th Cir. 1993) (granting preclusive effect to administrative decision under collateral estoppel doctrine when plaintiff declined to seek review in state court as allowed by statute); Reed v. Amax Coal Co., 971 F.2d 1295, 1300 (7th Cir. 1992) (finding preclusion of plaintiff's 42 U.S.C. § 1981 claims due to the fact that they were ruled on by an administrative agency and plaintiff forewent administrative appeal).

### B. Substantively Deficient Claims

As to Plaintiff's remaining equal protection and tortious interference with contract claims, Defendant fails to raise res judicata or collateral estoppel as a defense, instead merely attacking them on their substantive merit. Accordingly, the Court analyzes those claims on their underlying legal merit alone.

#### 1. Equal Protection

Plaintiff's amended complaint avers that "there is no rational basis to afford nonrenewed teachers due process in the form of prehearing discovery and to deny such process to teachers whose contracts are terminated before expiration." Specifically, Plaintiff takes issue with the fact that teachers who are simply non-renewed between contract years are entitled to pre-hearing discovery pursuant to Mississippi Code Section 37-9-109, while employees who are terminated mid-year are granted no such discovery under Mississippi Code Section 37-9-59.

Defendant argues first that the claim is legally deficient because the purported classifications are a product of Mississippi's legislative enactment rather than a policy of the District, and second, that there is "clearly a rational basis for the distinction." In support of that proposed rational basis, Defendant alleges that because "just cause" is not required to non-renew an employee under Section 37-9-109, the statute "does offer the employee a trade off, that is, heightened procedural protections which include a prompt exchange of witnesses and exhibits

---

[4] To the extent Ellis may somehow be heard to complain that the Board's decision, outside of his argument regarding the specificity of the charges and discovery allowances, deprived him of procedural due process, the Court finds it noteworthy, and indeed fatal, that Ellis intentionally declined appeal of that decision. As explicitly enumerated by Section 37-9-113(3)(c), "Any employee aggrieved by a decision of the school board may then appeal to the chancery court where the lawfulness of the board's decision may be contested on the basis that it was made in violation of some statutory or constitutional right of the employee." Failure to invoke the procedural process allowed to Plaintiff undercuts his ability to claim that he received inadequate procedural process. See Rathjen v. Litchfield, 878 F.2d 836, 839-40 (5th Cir. 1989) (explaining that generally "no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him."); Galloway v. State of Louisiana, 817 F.2d 1154, 1158 (5th Cir. 1987) ("an employee cannot ignore the process duly extended to him and later complain that he was not accorded due process.").

prior to the administrative hearing because the *employee* bears the burden of demonstrating the error underlying the 'non-renewal' decision." On the other hand, according to Defendant, where the superintendent bears the burden of showing "just cause" under Section 37-9-59, such procedural safeguards are not necessary. In response, Plaintiff contends simply that the distinction "is an arbitrary division of citizens, for equal protection purposes, which divides them into different classes and treats them differently, violating the equal protection clause."

Distilled to its most basic maxim, "the equal protection clause mandates similar treatment of persons in similar situations." Areceneaux v. Treen, 671 F.2d 128, 131 (5th Cir. 1982). Where, as the parties agree here, rational basis review applies, the equal protection clause "requires only that the legislative classification rationally promote a legitimate governmental objective." Id. Further, the review "begins with a strong presumption of constitutional validity." Malagon de Fuentes v. Gonzales, 462 F.3d 498, 504 (5th Cir. 2006) (citing Flores-Ledezma v. Gonzales, 415 F.3d 375, 381 (5th Cir. 2005)). The plaintiff bears the burden of showing that the "law is arbitrary," and the differential treatment must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Kite v. Marshall, 661 F.2d 1027, 1030 (5th Cir. 1981).

Here, the Court finds that Plaintiff's equal protection challenge fails. First, as Defendant contends and Ellis fails to rebut, the legal distinction complained of is that which is propagated by the State of Mississippi, rather than the District. Ellis's complaint is focused solely on the state legislature's enactment of the distinction, rather than a specific policy instituted or maintained by the District here. See Pl.'s Am. Compl., at ¶ 49 ("Miss. Code § 37-9-59, governing Ellis's termination here, provides for *none* of the pre-hearing discovery permitted nonrenewed teachers and discriminates on its face against terminated teachers and/or permits the

unlawful administration by state officers of a statute fair on its face but resulting in unequal application to those who are entitled to be treated alike."); Pl.'s Resp. to Def.'s Mot. for Summ. J., at 33-34 ("Under Mississippi law, licensed teachers (such as Ellis) whose contracts are terminated before completion are afforded hearing and judicial review rights under the provision of Miss. Code §[§] 37-9-59, 37-9-111 and 37-9-113 . . . Miss. Code § 37-9-59, governing Ellis's termination here, provides for *none* of the pre-hearing discovery permitted non-renewed teachers and discriminates on its face against terminated teachers. . . Miss. Code § 37-9-59 fails to rationally advance any valid interest and is not reasonably related to a valid governmental interest."). In order to maintain his claim, Plaintiff must point to the conduct or policy of a party defendant. Ellis has neglected to do so, and his claim is likewise due to fail. See Salcido v. Univ. of Miss., — F. App'x —, 2014 WL 553114, at *4 (5th Cir. Feb. 13, 2014) (noting plaintiff's "equal protection claim fails because none of the named [d]efendants *made* decisions regarding clinical assignments and externships, and [plaintiff] has not provided competent evidence that they encouraged discriminatory behavior or instituted policies that led to her receiving fewer clinical hours").

Moreover, even apart from this pleading deficiency, Plaintiff has simply failed in his quest to show that the legislative distinction is arbitrary and that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." See Kite, 661 F.2d at 1027. In support of his claim, Ellis cites the Eleventh Circuit's approval of the principle that "[t]he Constitution does not require that things different in fact be treated in law as though they were the same. But it does require, in its concern for equality, that those who are similarly situated be similarly treated." See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 33 (quoting Johnson v. Smith, 696 F.2d 1334, 1336 (11th Cir. 1983)).

15

The problem with this contention, of course, is that Plaintiff has wholly ignored his obligation to show that terminated teachers do not stand on factually distinct ground from non-renewed teachers. As articulated by the Mississippi Supreme Court, and echoed by Defendant, the superintendent bears the burden of proof in termination proceedings while the teacher bears the burden with regard to non-renewals. Mississippi Empl. Sec. Comm. v. Philadelphia Mun. Sep. Sch. Dist. of Neshoba Co., 437 So. 2d 388, 392 n.4 (Miss. 1983). Furthermore, while a teacher terminated under Section 37-9-59 can only be discharged for one of the reasons enumerated by the statute, a teacher can be non-renewed under Section 37-9-105 for *any* reason, so long as it is not a reason prohibited by law and the procedural safeguards are met. Id. Thus, as it stands, Section 37-9-105 allows greater latitude with regard to the justification for a nonrenewal decision, but also requires heightened procedural safeguards. Plaintiff has failed to show that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification" and his equal protection claim fails as a matter of law. Kite, 661 F.2d at 1027.

*2. Tortious Interference with Contract*

With regard to Plaintiff's tortious interference claim, Ellis claims that "on October 7, 2011, TPSD Interim Superintendent Meadows, without prior notice to Ellis[,] nor with his consent, mailed a letter to the parents of all of Ellis's voice students effectively terminating Ellis's private contracts with said parents and students." According to Plaintiff, "TPSD's action in so doing, through the action of its employee, Meadows, was intentional and willful, was calculated to cause damage to Ellis in his lawful business, was done with the unlawful purpose of causing damage and loss, without right on the part of TPSD, constituting malice, and Ellis sustained actual damage and economic loss thereby."

16

In its motion for summary judgment, Defendant attacks that claim, arguing that Ellis "cannot establish that he had 'legally enforceable' contractual agreements with his student[s] that were breached by any alleged unjustified 'interference' by the District," and that, regardless, any such relationships between teacher and students would be "subject to the ethical rules and school district policies and procedures," providing a legal justification for any such interference. In response, Ellis cites his own sworn testimony in which he avers that he entered into written contracts with the parents of said pupils and claims that "absent some failure of consideration or other defense (which the District has no standing to assert) a contract, oral or written, is obviously 'legally enforceable.'" Further, Ellis argues, "Just what laws, ethics, ethical rules and school district policies and procedures the District refers to in making this statement is left to the imagination of the reader, as, clearly, the District cites none. While it may be true that the District may prohibit private tutoring by its teachers of their students, such had never been the case prior to firing Ellis." Ellis concludes his argument by contending that "the Administration's letter placing him on leave prohibited his contact with the contracting parents and students, and the Board's decision in March, 2012, effectively terminated the contracts in their entirety."

Under Mississippi law, recovery for intentional interference with contract is allowed against those who "intentionally and improperly interfere with the performance of a contract." Morrison v. Miss. Enter. for Tech. Inc., 798 So. 2d 567, 574 (Miss. 2001). Notably, however, mere negligent interference amounts to no cause of action at all. Id. Thus, the elements required to show intentional or tortious interference with contract are: (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that

actual damage and loss resulted. Id. (citing Par Indus. Inc., v. Target Container Co., 708 So. 2d 44, 48 (Miss. 1998)). Significantly, "[t]he element of willfulness and calculation does not require a showing on the part of the plaintiff that defendant had a specific intent to deprive plaintiff of contractual rights," but instead, "the requisite intent is inferred when defendant knows of the existence of a contract and does a wrongful act *without legal or social justification* that he is certain or substantially certain will result in interference with the contract." Id. (emphasis added) (citing Liston v. Home Ins. Co., 659 F. Supp. 276, 281 (S.D. Miss. 1986)). On the other hand, "even if a party 'interferes' with the formation or execution of a contract, if he has [a] legitimate interest therein or a contractual right to perform such act, it is privileged and thus not wrongful and actionable." King's Daughters and Sons Circle Number Two of Greenville v. Delta Reg'l Med. Ctr., 856 So. 2d 600, 604 (Miss. Ct. App. 2001) (quoting Vestal v. Oden, 500 So. 2d 954, 957 (Miss. 1986)).

After review, the Court determines that Plaintiff's tortious interference claim similarly fails. Although Plaintiff has successfully made a showing that the District was aware of the third-party contracts at the time it sent the challenged letters, Ellis has failed to create a genuine dispute of material fact as to whether Defendant acted without social or legal justification, and thus, with the requisite malice. Under the terms of Ellis's employment, his contractual relationship with the District was "subject to all applicable policies, resolutions, rules and regulations of the employer, the Mississippi Educator Code of Ethics and Standard of Conduct adopted by the State Board of Education, and the laws of the State of Mississippi." Under Mississippi law, Meadows was charged with a duty to "observe and enforce the statutes, rules and regulations prescribed for the operation of schools." MISS. CODE ANN. § 37-9-69.

18

In the letters, Meadows stated, "In light of the new Code of Ethics, the Tupelo Public School District Board of Trustees is undertaking a review of its relevant policies . . . [t]herefore, pending the Board's review, any and all tutoring, private lessons, private coaching, etc., given by a teacher and/or coach to his/her student(s) is to be immediately suspended." As such, the Court finds that the District had a "legitimate interest" in sending the letters despite the fact that such action may have interfered with Ellis's third-party contractual relations. As Ellis, himself, admits, his remunerated tutoring was forbidden absent prior board approval, and, although he had previously been granted a waiver to that prohibition, it cannot be said that the District acted without legal or social justification when it suspended that activity pending further review of the applicable legal standards. As the superintendent, Meadows was under a statutory obligation to "observe and enforce" the applicable state regulations governing school operation. The Court accordingly finds that the letters were sent "in the exercise of a legitimate interest or right," and are not actionable under a tortious interference theory. See Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel and Cocke, P.A., 910 So. 2d 1093, 1099 (Miss. 2005) (quoting Martin v. Texaco, Inc., 304 F. Supp. 498, 502 (S.D. Miss. 1969).

## CONCLUSION

For the reasons set forth above, Plaintiff's breach of contract, tortious breach of contract, and procedural due process claims are barred by the doctrine of res judicata and are therefore dismissed. Further, Plaintiff has failed to establish a genuine dispute of material fact with regard to his equal protection and tortious interference claims, and judgment as a matter of law is therefore due in favor of Defendant as to those claims. Accordingly, Defendant's Motion for Summary Judgment [29] is granted. This cause remains open with respect to Defendant's Motion for Sanctions [9], and the Court declines to enter final judgment at this time.

SO ORDERED, this the 31st day of March, 2014.

                                                                         **/s/ Sharion Aycock**
                                                                         **U.S. DISTRICT JUDGE**